**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | | |
|---|---|---|
| **ELDA COELLO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. WGC-16-2255** |
| | ) | |
| **GINOU, INC.,** *d/b/a* | ) | |
| **MOSAIC CUSINE AND CAFÉ** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **THIERRY JUGNET** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

On June 21, 2016 Plaintiff Elda Coello ("Plaintiff") brought this action against Defendants Ginou, Inc., doing business as Mosaic Cuisine and Café, and Thierry Jugnet (hereinafter "Defendants") alleging unpaid wages and other damages in violation of the Fair Labor Standards Act ("FLSA") and related state (Maryland) and local (Montgomery County) laws. *See* ECF No. 1. On July 27, 2016 the parties filed an Initial Joint Status Report requesting a temporary "stay [of] all deadlines, pending the referral of this matter to a Magistrate Judge for early mediation and the submission of a post-mediation Joint Status Report by the Parties." ECF No. 8 at 1-2. That same day Judge Chuang issued an Order staying all deadlines in the Scheduling Order. *See* ECF No. 9. Additionally, on July 27, 2016, Judge Chuang referred the case to the undersigned for settlement. *See* ECF No. 10.

A settlement conference was held approximately three months later on October 25, 2016. A settlement was reached resolving all of Plaintiff's claims except the issue of attorneys' fees.

The next day this case was referred to the undersigned for all further proceedings. *See* ECF No. 13. Fifteen days later the parties filed a Joint Motion for Approval of FLSA Settlement Agreement. *See* ECF No. 15. This Agreement specifically excluded Plaintiff's request for attorneys' fees and costs but permitted Plaintiff to file a motion. Five days later the undersigned granted the joint motion to approve settlement agreement. *See* ECF No. 16.

Pending before the court and ready for resolution is Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 17-2). Defendants filed an Opposition (ECF No. 19-2) and Plaintiff filed a Reply (ECF No. 25-2). No hearing is deemed necessary, *see* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Plaintiff's motion will be granted in part and denied in part.

### *Standard of Review*

"The proper calculation of an attorney's fee award involves a three step process. First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In assessing reasonableness, the United States Court of Appeals for the Fourth Circuit has instructed district courts to consider what are known as the *Johnson* factors, which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12)

attorneys' fees awards in similar cases. *Id.* at 88 n.5 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

"Next, the court must 'subtract fees for hours spent on unsuccessful claims related to successful ones.' Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244). The Fourth Circuit has noted that a district court's determination of attorneys' fees should stand unless the district court abused its discretion by reaching a decision that is "'clearly wrong' or committing an 'error of law.'" *Id.* at 88 (quoting *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

### *Analysis*

Plaintiff seeks $66,460.00 in attorneys' fees and $609.10 as costs, for a total award of $67,069.10. *See* ECF No. 17-2 at 18. Defendants assert, in light of this short-lived, straightforward case which was not aggressively contested, and further, in light of the excessive and unnecessary time generated on this case, as well as the fact that Plaintiff achieved limited success, a more appropriate award would be $14,365.00 in attorneys' fees and $514.10 as costs, for a total award of $14,879.10. *See* ECF No. 19-2 at 22. In her reply Plaintiff asserts the attorneys' fees and the costs sought are reasonable and should be awarded and, requests additional fees for preparing her reply, increasing the award of attorneys' fees to $70,797.50, which increases the requested total award to $71,406.60. *See* ECF No. 25-2 at 7.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████        In her Reply Plaintiff does not challenge any of these figures.

The court would not characterize Plaintiff's case as a success. She was partially successful ███████████████████████████. The award of attorneys' fees will reflect Plaintiff's partial success.

A.     *Lodestar Calculation*

       *1. Hourly Rate*

The court begins its analysis with the *Lodestar* calculation. "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant *must* produce satisfactory specific evidence of the prevailing market rates in the *relevant community for the type of work for which he seek an award*," including, for example, "affidavits of other *local* lawyers who are familiar both with the skills of the fee applicants and more generally the type of work in the relevant community." *Id.* at 244, 245 (emphases added) (internal quotation marks omitted).

Plaintiff seeks the following hourly rates for counsel and paralegals/law clerks:

       Daniel A. Katz (21 years admitted to the bar): $475.00

       Lucy B. Bansal (2 years admitted to the bar): $225.00

       Matthew Mihalich (4 years admitted to the bar): $225.00

       Chauna A. Pervis (3rd year law student): $150.00

       Cricelia Calderon (paralegal): $150.00

       Wendi Rosales (paralegal): $150.00

*See* ECF No. 17-5 at 6 (Katz Decl. ¶ 6). Plaintiff supports her requested hourly rates via declarations from experienced local counsel who are primarily familiar with the reputation and skills of Mr. Katz. *See* ECF No. 17-6 (Declaration of Andrew D. Freeman, Esquire), ECF No.

17-7 (Declaration of Leizer Z. Goldsmith, Esquire), ECF No. 17-8 (Declaration of Philip B. Zipin, Esquire).

Defendants challenge the rates as unreasonable. First, each timekeeper charged the highest rate permitted under the Local Rules irrespective of experience level. Second, Plaintiff failed to disclose the experience level of the two paralegals. Third, counsel for Defendants has represented both plaintiffs and defendants in FLSA matters. With his 18 years of experience, he charges $325.00 per hour, a rate he believes is consistent with the marketplace in Montgomery County. Fourth, Defendants ask the court to approve no more than the hourly rate awarded in *Butler v. Directsat USA, LLC*, Civ. A. No. DKC 10-2747, 2016 U.S. Dist. LEXIS 35632 (D. Md. Mar. 18, 2016), where Mr. Katz and others from his law firm represented Plaintiffs in a FLSA matter. *See* ECF No. 19-2 at 7-8.

In her Reply Plaintiff rejects Defendants' assertions and notes her requested hourly rates "are supported by declarations from experienced employment law attorneys regarding the prevailing market rate for similar work done within the district." ECF No. 25-2 at 6. Further, Plaintiff asserts *Butler* is distinguishable because the majority of the work done in that case "occurred before the Court's upward revision of Appendix B rates, at a time when Mr. Katz's Appendix B rate was $275-$400." *Id.* at 7.

The court has reviewed the declarations of Andrew D. Freeman, Leizer Z. Goldsmith, and Philip B. Zipin. Mr. Freeman, a partner with the law firm of Brown, Goldstein & Levy since 1994, has been admitted to the bar for thirty (30) years. Mr. Freeman is "familiar with the hourly rates that other Maryland law firms charge for litigation in the Baltimore region." ECF No. 17-6 at 3 (Freeman Dec. ¶ 6). According to Mr. Freeman, Mr. Katz's law firm (Gary M. Gilbert & Associates, P.C.) is considered "among the foremost employment law firms in the region." *Id.* at

4 (Freeman Decl. ¶ 7)(. Mr. Freeman attests "that Mr. Katz enjoys a national reputation as a skilled employment law advocate. He is widely known as one of the most experienced wage and hour litigators in the Washington-Baltimore metropolitan area." *Id.* Considering Mr. Katz's 20 plus years of extensive litigation experience, if he worked for Brown, Goldstein & Levy, Mr. Freeman opines the law firm would charge an hourly rate of at least $500 to $525 for Mr. Katz's services. *Id.* at 5 (Freeman Decl. ¶ 10).

Mr. Goldsmith, the principal of Goldsmith Law Firm, LLC, has been admitted to the bar for twenty-eight (28) years. Mr. Goldsmith charges an hourly fee similar to the fees outlined in the Laffey Matrix, established by the United States District Court for the District of Columbia. *See* ECF No. 17-7 at 3 (Goldsmith Decl. ¶ 10). According to Mr. Goldsmith Mr. Katz's law firm is regarded as one of the outstanding plaintiffs' employment firms in the area. *Id.* (Goldsmith Decl. ¶ 12). "Throughout the Washington, D.C.–Baltimore, Maryland area, Mr. Katz is well known as one of the few private practitioners willing to consistently represent low wage immigrant workers who present claims for unpaid wages." *Id.* at 4 (Goldsmith Decl. ¶ 15). Mr. Goldsmith reviewed the Condensed Fee Summary generated by Mr. Katz's law firm for Plaintiff's case. Mr. Goldsmith opined the amount of fees is reasonable considering the nature of this case.

Mr. Zipin, a partner with Zipin, Amster & Greenberg, LLC in Silver Spring, Maryland, has been admitted to the bar for thirty-four (34) years. "Because I practice regularly before the U.S. District Court of Maryland and mostly practice under fee shifting statutes involving the non-payment of wages, misclassification, or failure to pay minimum wage, I keep my rates constrained within the limits specified in Appendix B to the Local Rules for the District of Maryland, which governs hourly rates for fee shifting cases throughout the state, not just in

metropolitan Washington, DC." ECF No. 17-8 at 2 (Zipin Decl. ¶ 2). Mr. Zipin's hourly rate is $475.00. Mr. Zipin opines the law firm of Gary M. Gilbert & Associates is among the foremost employment law firms in the region. *Id.* at 3 (Zipin Decl. ¶ 4). Mr. Katz is nationally recognized as a skilled employment law advocate. *Id.* (Zipin Decl. ¶ 5). He is one of the few Spanish speaking attorneys to handle wage and hour cases on behalf of low wage workers. *Id.* at 4 (Zipin Decl. ¶ 6). Having reviewed the law firm's billing record generated for this case, Mr. Zipin opines the fee is reasonable in light of the nature of the case, the juncture when the case settled, and Defendants contesting that Plaintiff was owed any wages.

After considering these declarations the court finds Mr. Zipin's declaration most relevant regarding the hourly rate Mr. Katz seeks. Mr. Freeman's declaration reflects his knowledge about the hourly rate in the *Baltimore* region. On the other hand, Mr. Goldsmith's declaration shows the basis for his hourly rate is linked to the Laffey Matrix, established by the United States Attorney *for the District of Columbia*, and utilized by the United States District Court *for the District of Columbia* in fee shifting litigation. Mr. Zipin, however, keeps his rate constrained within the limits specified in Appendix B to the Local Rules for the United States District Court for the District of Maryland, the relevant community for this motion for attorneys' fees.

Mr. Zipin, admitted to the bar for thirty-four (34) years, would petition the court for fees at the highest rate, $475.00 per hour. Mr. Katz, who has been admitted to the bar for twenty-one (21) years, thirteen years fewer than Mr. Zipin, petitions for the identical hourly rate. The guideline in Appendix B provides a range of $300-$475 for lawyers admitted to the bar for twenty (20) years or more. The court does not automatically assign a lower rate to attorneys admitted to the bar for 20 years or assign a higher rate to attorneys admitted to the bar for thirty-five (35) years. The court also considers an attorney's experience, reputation, and ability. Based

on the declarations of Messrs. Freeman, Goldsmith, and Zipin, Mr. Katz is highly regarded, both regionally and nationally, as an employment law advocate. He is a Senior Counsel/Partner at his law firm. His firm has represented both plaintiffs and defendants in employment law matters. Considering Mr. Katz's experience, ability, reputation, and years admitted to the bar, the court finds the hourly rate of *$425.00* to be reasonable. *See Manna v. Johnny's Pizza, Inc.*, Civ. No. CCB-13-721, 2014 U.S. Dist. LEXIS 24085, at *8 (D. Md. Feb. 25, 2014).

Unlike Mr. Katz there is a very limited[1] to no information about the remaining attorneys and staff assigned to Plaintiff's case. Because the burden is on Plaintiff to establish the reasonableness of the requested fees and Plaintiff has failed to support the requested rates with sufficient information, the court adjusts the hourly rates as follows:

| | |
|---|---|
| Lucy B. Bansal, Esq: | $195.00 |
| Matthew Mihalich, Esq. | $215.00 |
| Chauna A. Pervis | $100.00 |
| Cricelia Calderon | $100.00 |
| Wendi Rosales | $100.00 |

*2. Reasonable Hours Worked*

Plaintiff contends the hours generated by her legal team were reasonable. Nonetheless, in the exercise of billing judgment, Mr. Katz, Plaintiff's lead counsel, has voluntarily reduced the requested fee by 16.9% of the actual time spent on this litigation, which equates to 15.6% deduction of the fees incurred in litigating this action. *See* ECF 17-2 at 6. Despite Plaintiff's voluntary deduction Defendants urge the court to determine the reasonableness of the hours claimed. "[T]he parties agreed to engage in very limited written discovery in hopes of keeping the litigation costs to a minimum. Yet, the number of hours that [the Law Offices of Gary M.

---

[1] Mr. Freeman refers to Lucy B. Bansal, Esquire in his declaration.

Gilbert & Associates P.C. ("GMGA")] has amassed during this very short-lived case is extraordinary." ECF No. 19-2 at 9. In her memorandum in support of attorneys' fees and costs, Plaintiff summarizes the reasonable hours[2] for which she seeks compensation as follows:

| | |
|---|---|
| Case development, background investigation, and case administration: | 88.5 |
| Pleadings: | 00.0 |
| Interrogatories, document production and other written discovery: | 24.1 |
| Depositions: | 00.0 |
| Motions practice: | 00.0 |
| Attend court hearings: | 00.0 |
| Trial preparation and post-trial motions: | 00.0 |
| Attending trial: | 00.0 |
| ADR: | 54.0 |
| Fee petition preparation: | 30.0 |
| Total: | 238.2 |

ECF No. 17-2 at 18. The court now considers whether the hours generated for the various litigation phases were reasonable.

    a.    *Case development, background investigation & case administration*

        1.    *Pre-Engagement Phase*

Plaintiff retained GMGA to represent her on May 18, 2016. Plaintiff seeks reimbursement for the time GMGA expended before this date. Defendants argue the 8.8 hours (valued at $1,840.00) for time spent investigating Plaintiff's claims before retention are not

---

[2] This summary of hours for various phases of litigation is not consistent with the billing history. *See infra*.

appropriate for a fee petition and should be deducted from Plaintiff's award. *See* ECF No. 19-2 at 9.

The court has reviewed the pre-engagement hours. At the outset the court notes a discrepancy between the invoice and the slip listing. The former lists a total of 8.8 hours (valued at $1,840.00) for pre-engagement activity. *See* ECF No. 17-4 at 3-4. The latter however lists a total of 8.**9** hours valued at *$1,855.00*. *See* ECF No. 17-4 at 44. The discrepancy is due to the fact that the former *does not charge* 0.1 hour by a paralegal at an hourly rate of $150.00 on May 4, 2016. In her Reply Plaintiff acknowledges a clerical discrepancy between the two descriptive charts. *See* ECF No. 25-2 at 7. The invoice or history bill (what Plaintiff calls Exhibit B) is *lower than* the slip listing or Appendix B chart (what Plaintiff calls Exhibit B-1). Exhibit B being *lower than* Exhibit B-1 is contrary to Plaintiff's explanation in the Reply ("A 'history' bill was attached as exhibit B. That exhibit contains an error which resulted in fees slightly higher than the Appendix B chart, Exhibit B-1."). ECF No. 25-2 at 7. Plaintiff further proclaims the attorneys' fees as listed on Exhibit B-1 reflect the actual fees requested by Plaintiff's law firm. The court will therefore use the figures as listed on the slip listing/Appendix B chart, *i.e.,* Exhibit B-1. Therefore, Plaintiff's law firm billed 8.9 hours valued at $1,855.00 for pre-engagement activity.

Second, generally, if a fee would not be billed to a private client, counsel may not recover fees for such work. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'") (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc)). Defendants object to the 8.9 hours because the time was billed *before* GMGA was retained. In her Reply Plaintiff does not specifically respond to this assertion. Instead Plaintiff claims Defendants did not "engage in the specific analysis required to disqualify any specific time

entry[,]" ECF No. 25-2 at 6, and therefore the court should reject Defendants' broad assertion that the fees are excessive.

The court disagrees with Plaintiff's characterization. Defendants are very specific in their objection to the "pre-engagement" time. However, contrary to Defendants' position, fees generated during the pre-engagement stage are not automatically rejected. Plaintiff is entitled to recoup fees for reasonable time spent interviewing a prospective client, preparing for the interview, and preparing the lawsuit. *Manna*, 2014 U.S Dist. LEXIS 24085, at *11. Based on these criteria the court approves a total of six entries, specifically, 1.6 hours generated by Mr. Katz (April 28, May 2, 3, 2016) and 4.5 hours generated by Ms. Calderon (paralegal) (May 3 and 16, 2016). Plaintiff is thus entitled to recover fees as follows:

| | | | |
|---|---|---|---|
| (a) Mr. Katz | 1.6 hours x $425.00 | = | *$680.00* |
| (b) Ms. Calderon | 4.5 hours x $100.00 | = | *$450.00* |

In summary, the total amount Plaintiff may recover for the pre-engagement phase is **$1,130.00**. The remaining fees generated during the pre-engagement phase are not recoverable.

2.     *From Retention to Initial Demand Letter*

Between May 18, 2016 (the date Plaintiff signed the retainer agreement) and June 9, 2016 (the date GMGA sent the initial demand letter to Defendant Mosaic Cuisine and Café ("Mosaic")), GMGA generated 48.8 hours (valued at $10,326.00) to investigate Plaintiff's claims and draft an initial demand letter. Defendants contend the number of hours generated was excessive for this straightforward FLSA dispute.

Beginning with the entries dated May 18, 2016, the court has chronologically reviewed all entries through June 9, 2016. Because Plaintiff contends the billing history is more accurate on the slip listing (Exhibit B-1), the court uses this exhibit in determining whether the fees are

reasonable. Based on a review of Exhibit B-1, the court finds GMGA billed 49.1 hours, voluntarily eliminating 0.6 hour, for a total billed time of 48.5 hours.

In reviewing the entries for this time period, Ms. Calderon billed a total of 34.1 hours. The Court notes, at the outset, a series of "double billing" by Ms. Calderon on June 3, 2016. As listed on Exhibit B-1 (slip listing), Ms. Calderon generated 1.7 hours, *twice*, to "[f]inish demand letter draft and send to [Ms. Bansal] for review, generated 0.1 hour, *twice*, for "[p]hone call re emailing [Ms. Calderon's own] records re hours worked", and generated 0.3 hour, *twice*, for "[p]hone call from [Plaintiff] re[garding] questions." ECF No. 17-4 at 44-45. In contrast, on the Exhibit B (invoice), GMGA "double charges" for 1.7 hours for "[p]hone call re emailing [Ms. Calderon's own] records re[garding] hours worked", and does not charge for 0.1 hour generated by Ms. Calderon whereby she called herself, apparently reminding herself about records regarding presumably the hours Plaintiff worked. ECF No. 17-4 at 6. Once again the court notes the fees generated on the invoice (Exhibit B) are *less than* the fees generated on the slip listing (Exhibit B-1), which is contrary to the assertion in Plaintiff's Reply. For June 3, 2016 the court eliminates all double billings and declines to permit recovery for Ms. Calderon calling herself, thereby reducing her billed time to 31.9 hours.

Further, a review of the billing chart reveals additional "double billings" (a) on June 1, 2016 ("Continue working on spreadsheet re[garding] unpaid wages"), *twice*, for 3.0 hours and (b) on June 2, 2016 ("Begin drafting demand letter re[garding] unpaid wages"), *twice*, for 4.5 hours. Deducting these additional 7.5 hours reduces Ms. Calderon's billed time to 24.4 hours.

Moreover, the court finds some of the tasks performed by Ms. Calderon were more administrative or clerical than legal. "Fees for work performed by paralegals are generally recoverable, but only 'to the extent they reflect tasks traditionally performed by an attorney and

for which the attorney would customarily charge the client.'" *Kabore v. Anchor Staffing, Inc.*, Civ. No. L-10-3204, 2012 U.S. Dist. LEXIS 149761, at *10 (D. Md. Oct. 17, 2012) (quoting *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002) (citing *Hensley*, 461 U.S. at 433)). The court therefore subtracts 2.2 hours from Ms. Calderon's billed time, permitting the recovery of 22.0 hours.

As for Ms. Bansal, she billed a total of 6.9 hours. A review of the billing chart reveals she and Mr. Katz billed for duplicate work on some occasions. For instance on June 7, 2016 Mr. Katz billed 1.8 hours ("Continue drafting and revising demand letter."). That same day Ms. Bansal billed 2.0 hours ("Revisions to demand letter"). On June 9, 2016 Mr. Katz billed 1.1 hours ("Finalize demand letter/settlement proposal to employer."). That same day Ms. Bansal billed 0.5 hour ("Final review of demand letter; Serve same on Defendants"). An overlapping of work occurred between Ms. Bansal and the paralegal Ms. Calderon. Besides Ms. Bansal serving the demand letter on Defendants, on June 9, 2016 Ms. Calderon billed 0.2 hour ("Serve demand letter re unpaid wages on Mosaic Cuisine and Café via regular mail"). Moreover, Ms. Bansal billed for multiple strategy sessions or conferences with Mr. Katz. The court subtracts 4.0 hours from Ms. Bansal's billed time, permitting the recovery of 2.9 hours.

Finally, Mr. Katz billed 7.5 hours. The court deducts 0.5 hour for strategizing on June 9, 2016. Plaintiff is permitted to recover 7 hours billed by Mr. Katz. Plaintiff is thus entitled to recover fees as follows:

| | | | |
|---|---|---|---|
| (a) Mr. Katz | 7.0 hours x $425.00 | = | *$2,975.00* |
| (b) Ms. Bansal | 2.9 hours x $195.00 | = | *$565.50* |
| (b) Ms. Calderon | 22.0 hours x $100.00 | = | *$2,200.00* |

In summary, the total amount Plaintiff may recover for work performed from retention to the initial demand letter is **$5,740.50**. The remaining fees generated during this period are not recoverable.

### 3.  *Post-Demand Letter to Pre-Pleadings*

From June 10 to 15, 2016 GMGA billed 6.7 hours, voluntarily eliminating 0.4 hour, for a total billed time of 6.3 hours. The court further deducts an additional 1.3 hours for clerical duties, conferences, and strategy sessions. Plaintiff is thus entitled to recover fees as follows:

| | | | |
|---|---|---|---|
| (a) Mr. Katz | 1.5 hours x $425.00 | = | *$637.50* |
| (b) Ms. Bansal | 0.5 hour x $195.00 | = | *$97.50* |
| (c) Ms. Calderon | 3.0 hours x $100.00 | = | *$300.00* |

In summary, the total amount Plaintiff may recover for work performed from post-demand letter to pre-pleadings is **$1,035.00**. The remaining fees generated during this period are not recoverable.

### b.  *Pleadings*

With regard to pleadings GMGA billed 23.5 hours, voluntarily eliminating 1.3 hours, for a total billed time of 22.2 hours. After carefully reviewing the billing entries, the court further reduces the billed time by 9.2 hours, reducing the total recoverable time to 13 hours. Three attorneys (Mr. Katz, Mr. Mihalich, and Ms. Bansal) were involved in drafting, editing, and reviewing the Complaint. The participation of three attorneys is excessive. The court has declined to approve billed time in instances of duplication of activity. Plaintiff therefore is entitled to recover fees as follows:

| | | | |
|---|---|---|---|
| (a) Mr. Katz | 4.1 hours x $425.00 | = | *$1,742.50* |
| (b) Mr. Mihalich | 3.3 hours x $215.00 | = | *$709.50* |

| | | |
|---|---|---|
| (c) Ms. Bansal | 2.7 hours x $195.00 | *$526.50* |
| (d) Ms. Calderon | 2.9 hours x $100.00 | *$290.00* |

In summary, the total amount Plaintiff may recover is **$3,268.50** as time billed for pleadings. The remaining fees generated during this phase are not recoverable.

  c.  *Interrogatories, Document Production & Other Written Discovery*

  Between July 20 and October 14, 2016 GMGA billed 54 hours, voluntarily eliminating 6.8 hours, for a total billed time of 47.2 hours. According to Defendants Plaintiff served nine (9) interrogatories upon Defendant Ginou, Inc. d/b/a Mosaic Cuisine and Café, served nine (9) interrogatories upon Defendant Thierry Jugnet, and served nine (9) Requests for Production of Documents to all Defendants. "Most of the interrogatories and request for documents requests were typical of FLSA litigation, and should not have taken experienced counsel more than 30 minutes per set to draft." ECF No. 19-2 at 12. However, Plaintiff seeks a total of 8 hours, 7.3 attributable to attorney time and the remainder attributable to paralegal time. *Id.* In her Reply Plaintiff rebukes Defendants' assertion that Plaintiff's experienced counsel only needed 30 minutes to draft each set of discovery requests. Plaintiff notes Defendants do not acknowledge they denied owing Plaintiff anything. Further, Defendants pled fourteen (14) separate affirmative defenses in their Answer. ECF No. 25-2 at 4.

  Upon reviewing the billing entries the court notes Ms. Bansal spent 3.5 hours drafting pre-mediation discovery (July 26, 2016) and 1.5 hours finalizing and signing Plaintiff's first set of discovery requests (July 27, 2016). Mr. Katz dedicated 0.3 hour editing the first set of interrogatories to Ginou, Inc., 0.3 hour editing the first set of interrogatories to Jugnet, and 0.8 hour editing the request for production of documents to all Defendants (July 26, 2016). Ms. Bansal is not as experienced as Mr. Katz and thus, not surprisingly, she billed more time for

drafting discovery requests. The court notes however that a total of twenty-seven (27) interrogatories and requests for production were propounded. The court will reduce Ms. Bansal's billed time by one (1) hour, permitting a recovery of 2.5 hours. The amount of time (1.4 hours) Mr. Katz spent editing the discovery requests is reasonable and no adjustment will be made to the time claimed.

Contrarily GMGA generated more billable hours responding to Defendants' discovery requests. Between August 1 and September 6, 2016 Mr. Katz alone billed 12.3 hours drafting responses to Defendants' discovery requests and conferring with Plaintiff about discovery requests. During this same period Ms. Calderon billed 20.6 hours conferring with Plaintiff, organizing paystubs, drafting answers and responses to Defendants' discovery requests. These two GMGA members billed 32.9 hours, the vast majority of the total billed time (35.2 hours) dedicated to responding to 12 interrogatories and 7 document requests.

In their Opposition Defendants disclosed, "in hopes of reducing the time that the Plaintiff's counsel would spend responding to discovery, [Defendants] only requested that the Plaintiff respond to a total of 12 [] interrogatories and 7 document requests." ECF No. 19-2 at 12 (footnote omitted). As Defendants acknowledge, "Defendants had orginal[ly] served a set of 25 interrogatories and 14 document requests on the Plaintiff, but once the parties agreed to participate in a settlement conference, the Defendants limited the number of interrogatories and document requests." *Id.* n.8. Although Defendants do not provide a time line, from Plaintiff's billing chart, the court knows GMGA received Defendants' discovery request on July 20, 2016 (Ms. Bansal billed 0.3 hour, "Receive and review first discovery requests from Defendants"). ECF No. 17-4 at 51. Seven days later counsel for Plaintiff and Defendants exchanged e-mails about the discovery requests. That same day Defendants' counsel sent an e-mail regarding "pre-

mediation discovery scope." *Id.* From the billing chart the court deduces counsel for Plaintiff did not generate billable hours answering and responding to Defendants' discovery requests until *after* Defendants limited the discovery requests to 12 interrogatories and 7 document requests.

In her Reply Plaintiff attributes the additional time required by GMGA due to Defendants' non-compliance with the law. "Defendants . . . ignore the time Plaintiff needed through discovery to calculate her damages. Both the federal and state laws at issue require Defendants to maintain detailed records of the hours, days, and weeks worked by Plaintiff." ECF No. 25-2 at 4.

After carefully reviewing the billing entries, considering Mr. Katz's vast experience, and recognizing the various tasks performed by Ms. Calderon (which overlapped tasks performed by Mr. Katz), the court reduces Mr. Katz's billed time by 7.3 hours (permitting recovery of 5.0 hours), reduces Ms. Calderon's billed time by 7.0 hours (permitting recovery of 13.6 hours), and denying Ms. Bansal's 0.2 hour and Ms. Rosales' 2.10 hours.

Post September 6, 2016, GMGA generated an additional 3.5 hours by Mr. Katz, Ms. Bansal, Ms. Calderon, and Ms. Rosales. In reviewing the descriptions of tasks performed, the court finds the billable hours generated by Ms. Calderon and Ms. Rosales are clerical or administrative in nature and thus are not recoverable. The 0.5 hour billed by Ms. Bansal on September 20, 2016 duplicates work performed by Mr. Katz. Moreover, the 0.5 hour billed by Ms. Rosales on October 14, 2016 ("Review Client damages calculations and document production produced by Defendant and Document Production produced by Client re paystubs and checks"), ECF No. 17-4 at 53, is well after all other discovery activity in the case. Moreover, these tasks were performed less than two weeks before the October 25, 2016 settlement conference. Furthermore, these tasks appear duplicative of work performed by Ms. Calderon on

the same date ("Review and identify payments received on damages spreadsheet and correct same in preparation for settlement discussions; Confer with [Ms. Rosales] re same").  ECF No. 17-4 at 54. The court will permit Plaintiff to recover 0.5 hour generated by Mr. Katz on September 15, 2016  ("Initial review of defendants' interrogatory responses") but will not permit recovery of 0.5 hour generated by Mr. Katz on September 16, 2016 ("Initial review of defendants' responses to plaintiff's interrogatories").

Based on the above Plaintiff is entitled to recover fees as follows:

| (a) Mr. Katz | 6.9 hours x $425.00 | = | *$2,932.50* |
|---|---|---|---|
| (b) Ms. Bansal | 2.5 hours x $195.00 | = | *$487.50* |
| (c) Ms. Calderon | 13.6 hours x $100.00 | = | *$1,360.00* |

In summary, the total amount Plaintiff may recover for billed time for interrogatories, document production and other written discovery is **$4,780.00**. The remaining fees generated during this phase are not recoverable.

*d.*     ADR

Between June 30 and November 28, 2016 GMGA billed 91.5 hours, voluntarily eliminating 18.0 hours, as well as eliminating 19.0 additional billable hours assigned $0.00 slip value, for a total billed time of 54.5 hours.[3] In their Opposition Defendants argue "[the] amount of time [*i.e.,* 54 hours] was unnecessary and extremely wasteful considering the needs of the case and the straightforward nature of the dispute." ECF No. 19-2 at 14. The court finds some merit to Defendants' argument.

For instance, a third year law student, Ms. Pervis, billed 4.1 hours on September 9, 2016 for drafting "provable facts, weaknesses in case, evaluation of damages, history of settlement negotiations, and estimate of attorneys' fees for use in ex parte pre-mediation letter[.]" ECF No.

---

[3] Based on Exhibit B-1, the court finds the total time is 54.5 hours, not 54 hours.

17-4 at 53. However a month later, on October 13, 2016, Mr. Katz billed 2.9 hours for reviewing Defendants' document production and responses to interrogatories in preparation for *drafting pre-settlement letter to court*. Mr. Katz then billed an additional 3.6 hours the following day, "review defendants' discovery responses, compare to plaintiff's documents and continue drafting ex parte communication to Magistrate Judge." On October 17, 2016 Mr. Katz billed 4.5 hours for "finaliz[ing] pre-settlement conference letter to Judge Connelly, with review of all of defendants' documents and notes to calculate damages." In total Mr. Katz billed 11.0 hours to draft, edit and finalize the pre-settlement ex parte letter. Those 11.0 hours do not include Ms. Pervis' 4.1 hours or the numerous hours billed by the paralegals.

In light of the above, the court reduces Mr. Katz's hours dedicated to drafting, editing, and finalizing the pre-settlement ex parte letter to 5.0 hours. The court strikes Ms. Pervis' 4.1 hours since it appears GMGA never utilized her work product.

As for the remaining 39.4 hours billed, the court begins with a review of Ms. Bansal's hours. Her billed time is 6.4 hours. The court strikes various entries where Ms. Bansal duplicated work of Mr. Katz, or performed similar work as a paralegal, or edited a draft pre-settlement letter prepared by Ms. Pervis (which apparently was not used by GMGA). Plaintiff is entitled to recover 0.2 hour for Ms. Bansal's services.

Ms. Rosales, one of the paralegal assigned to this case, billed 13.6 hours. Plaintiff is entitled to recover 12.5 hours; the remaining 1.1 hours are deducted due to clerical tasks or internal conferences.

Ms. Calderon, the other paralegal assigned to this case, billed 8.4 hours. Plaintiff is entitled to recover 6.6 hours; the remaining 1.8 hours are deducted due to clerical tasks or internal conferences.

Finally, excluding the 11.0 hours billed for drafting, editing, and finalizing the pre-settlement ex-parte letter, Mr. Katz billed an additional 11.9 hours. Plaintiff is entitled to recover 6.0 hours The remaining 5.9 hours are deducted as administrative/clerical tasks (such as e-mail exchanges with the court and opposing counsel about a date for settlement conference), conferences, and unnecessary strategizing. Based on the above Plaintiff is entitled to recover fees as follows:

|     |     |     |     |     |
| --- | --- | --- | --- | --- |
| (a) Mr. Katz | 11.0 hours x $425.00 | = | *$4,675.00* |
| (b) Ms. Bansal | 0.2 hour x $195.00 | = | *$39.00* |
| (c) Ms. Rosales | 12.5 hours x $100.00 | = | *$1,250.00* |
| (d) Ms. Calderon | 6.6 hours x $100.00 | = | *$666.00* |

In summary, the total amount Plaintiff may recover as billed time for ADR is **$6,624.00**. The remaining fees generated during this phase are not recoverable.

   *e.*   *Fee Petition Preparation*

Between November 2 and December 5, 2016 GMGA billed 30.0 hours for the fee petition. Plaintiff has not voluntarily reduced any time from the fee petition. The billed time consists of 13.9 hours by Mr. Katz, 14.1 hours by Ms. Bansal, and 2.0 hours by Ms. Calderon.

In their Opposition Defendants argue the time billed for the fee petition preparation is excessive. Defendants claim they made proposals to resolve the fee petition on several occasions including "(1) at the settlement conference with Judge Connelly, (2) prior to the filing of the fee petition, and (3) after the filing of the fee petition. Unfortunately, these efforts were unsuccessful." ECF No. 19-2 at 14-15. In her Reply Plaintiff reaffirms the billed time and hourly rates of GMGA. Moreover, because GMGA had to spend time defending itself in response to

Defendants' Opposition, Plaintiff seeks an additional $5,282.50, raising the total requested award of attorneys' fees to $70,797.50.

At the outset the court declines to award any fees for Plaintiff's Reply. Defendants have raised legitimate concerns about the hourly rate and time billed for various tasks. Moreover, Plaintiff's Reply did not persuade the court to award fees in the amount as Plaintiff requested. In fact, Plaintiff will be awarded only *thirty-eight (38%) percent* of her requested attorneys' fees. Second, in light of his experience, the court finds excessive the number of hours billed by Mr. Katz for the fee petition preparation. Plaintiff is entitled to recover 5.5 hours; the remaining 8.4 hours are deducted.

With regard to the 14.1 hours billed by Ms. Bansal, the vast majority (12.6 hours) was billed on one day, December 1, 2016. On that day she drafted the fee petition (8.1 hours) and reviewed bills, case law and drafted exhibits for petition (4.5 hours). The court agrees with Defendants that a reduction in time is warranted based on excessive billing. Plaintiff is entitled to recover 10.0 hours. Finally, Ms. Calderon billed 2.0 hours and Plaintiff is entitled to recover those hours. Based on the above Plaintiff is entitled to recover fees as follows:

| | | | |
|---|---|---|---|
| (a) Mr. Katz | 5.5 hours x $425.00 | = | *$2,337.50* |
| (b) Ms. Bansal | 10.0 hours x $195.00 | = | *$1,950.00* |
| (c) Ms. Calderon | 2.0 hours x $100.00 | = | *$200.00* |

In summary, the total amount Plaintiff may recover as billed time for fee petition preparation is **$4,487.50**. The remaining fees generated during this phase are not recoverable.

Based on the above analysis, the total amount of attorneys' fees Plaintiff may recover is **$27,065.50.**

*B.*      *Costs*

Plaintiff seeks to recover $609.10 in costs. This amount consists of (a) the filing fee of $400.00 charged by this court, (b) $22.66 for postage, (c) $39.45 for photocopying, (d) $95.00 for file set-up, and (e) $10.80 for mileage for delivery to the court. *See* ECF No. 17-5 at 6 (Katz Aff. ¶ 14). In their Opposition Defendants object to the non-descriptive new file set-up fee of $95.00. Citing *Almendarez v. J.T.T. Enterprises Corp.*, Civil No. JKS-06-68, 2010 U.S. Dist. LEXIS 88043, at *21 (D. Md. Aug. 25, 2010), Defendants argue this type of fee cannot be charged to them. Defendants contend Plaintiff's recoverable costs should not exceed $514.10. *See* ECF No. 19-2 at 21. In the Reply Plaintiff does not address Defendants' opposition to the $95.00 file set-up fee. Considering both *Almendarez* and Appendix B of the Local Rules, Plaintiff is not entitled to recover the new file set-up fee of $95.00. Plaintiff is entitled to recover **$514.10** as costs.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees and Costs will be granted in part and denied in part.  An Order will be entered separately.

<u>February 28, 2017</u>                          _____/s/_____
        Date                                                    WILLIAM CONNELLY
                                                    UNITED STATES MAGISTRATE JUDGE